Turner et al. v. Chillicothe & Des Moines City R. R. Co., et al.

ever was taken or attempted. But the case is proceeded with, as if the cause were an original cause in the Circuit Court, except that the court in the judgment renders judgment against not only the defendant, but against Milt. Ewing and C. D. Combs whom the court calls the sureties on the appeal bond, while there is nothing upon the whole record to show that any judgment had ever been rendered by the Justice or any appeal bond given. This being the case, we are not at liberty to treat the case as an original cause brought in the Clinton Circuit Court. To do so would be to make the judgment erroneous as to those persons called sureties. The judgment as it appears before us is certainly erroneous, and must be reversed.

We cannot on such a record pass upon the other points raised in the case by the attorneys on either side. If it is desirable to have causes decided in this court, attorneys and parties should certainly see that the records filed here present a case upon which an intelligent judgment can be rendered. It may be that this record could have been perfected, but the cause has been submitted on the record as we find it.

The judgment of the court below is therefore, with the concurrence of the other judges, reversed and the cause remanded.

————o————

SMITH TURNER AND LUTHER T. COLLIER, Appellants, *vs.* THE CHILLICOTHE & DES MOINES CITY RAILROAD COMPANY AND WILLIAM S. MOORE & JERRY NOLAND, Respondents.

| 51 | 501 |
|----|-----|
| 31a | 673 |
| 51 | 501 |
| 102 | 283 |
| 51 | 501 |
| 52a | 338 |
| 51 | 501 |
| 58a | 526 |
| 51 | 501 |
| 82a | 574 |
| 51 | 501 |
| 159 | 567 |
| 84a | 168 |

1. *Practice, civil—Pleading—Allegata and Probata—Affidavit, etc.*—Where parties fail to file an affidavit setting forth in what respect they have been misled by a variance between the pleadings and the proof, (see W. S., 1033 §1,) such evidence will be permitted to go to the jury.

2. *Practice, civil—Conflict of testimony—Jury.*—When there is any conflict of testimony on any issue, that issue should be submitted to the jury.

3. *Corporations—Attorneys—Employment of—Board of Directors.*—The managing officers of Corporations have power to employ attorneys without any special authorization to that effect from their board of directors.

*Appeal from Common Pleas Court of Livingston County.*

*A. H. Vories*, for Appellant.

There was no evidence that it was any part of the business of the Treasurer of the Railroad to employ attorneys or to contract in reference thereto. (Sto. Agency, 6th Ed., § 134, *et seq.*, and authorities there cited. 1 Greenl. Ev., 5th Ed., §§ 113, 114 ; Swearingen vs. Knox, 10 Mo., 31.)

*Turner & Collier*, for Respondent.

The Rail Road Company was bound by the acts, declarations and promises of its officers, Shanklin and Ballew. (Western Bank vs. Gilstrap, 45 Mo., 420 ; Mumford vs. Hawkins, 5 Denio, 355 ; American Insurance Company vs. Oakley, 9 Paige, 496.)

SHERWOOD, Judge, delivered the opinion of the court.

This action was brought in the Common Pleas Court of Livingston County, by Turner and Collier, against The C. & D. M. City R. R. Co., and Moore, and Noland, for recovery for legal services alleged to have been jointly rendered at the special instance and request of said R. R. Co., and said Moore and Noland, in defending them in a large number of suits before Lucien Gordon, James C. Bernard, and ——— McBride, respectively, as justices of the Peace ; and a bill of items, referred to in the petition, was annexed thereto, showing in what causes the alleged services were performed. Defendants, Noland and Moore, filed their separate answer denying the allegations of the petition, and the R. R. Co. also filed its separate answer, denying the allegations aforesaid, admitting that it was defendant in various suits presumed to be the same set forth in plaintiff's petition, but averring that it made no defense to said suits, but only permitted plaintiffs to defend the same in its name, at the instance and request, and for the exclusive use and benefit of the defendants Noland and Moore. That plaintiffs, before said services were rendered, were advised by said R. R. Co., that it would not pay fees for the defense of said suits, and that such defense would only be permitted to be made by plaintiffs as the attorneys and for the use and benefit of their clients, Noland, and Moore.

To the answer last mentioned, a reply was filed, denying the allegations thereof.

On the hearing of the cause, a jury was impanelled, and the plaintiffs introduced and read in evidence a letter, dated October 17th, 1870, addressed to plaintiffs by the president and attorney of the R. R. Co., Shanklin, fully approving their action in signing appeal bonds, " in several cases against the Company in which Noland and Moore were interested ; " stating that the necessary power of attorney, would be sent as soon as it could be signed by the Secretary, and requesting plaintiffs in the meantime to do all that they deemed necessary for the interest of the Co., as well as that of Noland and Moore.

Plaintiffs also read in evidence, a letter from the same party to them, two days later in date, acknowledging the receipt of a letter from them, addressed to Noland and Moore and said Shanklin, and replying to said letter by a promise to come down to Court and see plaintiffs in relation to the subject matters of the letter, that the writer presumed they, the plaintiffs, desired to be indemnified against liability, in consequence of having signed the bonds, &c., and that this was right.

Plaintiffs then offered in evidence a power of attorney, dated October 18th, 1870, duly executed by said R. R. Co., to plaintiffs, reciting that they had been previously authorized as the attorneys of said Co., in certain cases then pending before Esq. Gordon, against said Co.; and that in pursuance of such power, they had signed certain appeal bonds, and granting plaintiffs, " full powers and authority to further defend all suits now pending in any of the Courts of Chillicothe against said Co," and " ratifying and confirming all acts and things which have been done, or may hereafter be done by said Turner & Collier, in respect to the defense of said causes or appeals thereon, " &c. The R. R. Co. objected to the reading of this instrument in evidence, on the ground that, according to plaintiff's own showing it bore date long subsequent to the rendition of the greater portion of the services

for which suit was brought. This objection was overruled, said instrument read, and said Co. excepted.

Turner, one of the plaintiffs, testified that he was employed by Shanklin, the said president of the R. R. Co., by letter, and thereupon read said letter which was dated June 10th, 1870, and requested said Turner to assist him in all legal matters in which the said Co. was a party or had an interest, at Chillicothe and in Livingston County, to which said Shanklin could not attend, and stating that by the terms of this contract between the R. R. Co., and Noland & Moore, the latter were to save the former harmless from all liens for work and labor done, &c.

This letter further stated that the suits then pending before Esquire Gordon against the Co., were regarded as involving its credits, and that it desired the matters ventilated ; more especially as Noland & Moore would pay the expenses, and concluded by requesting Turner to give those cases his personal attention with such assistance as Noland & Moore might choose to employ, &c.

Turner then proceeded to testify that the suits were commenced in 1870, were for wages for laborers on the C. & D. M. R. R.,were brought against the R. R. Co., under the statute, to secure and enforce a lien on the road-bed of said Co.; that the suits mentioned in the exhibit to plaintiff's petition were before Esquire Gordon, Justice of the Peace; that Noland and Moore asked to be made parties defendant to those suits, claiming to be parties interested ; that plaintiffs (Turner & Collier) accordingly procured the necessary order, making said N. & M. co-defendants, tried one or two of the cases (out of the thirty or forty in suit) were beaten, let the rest go by default; and then filed in such cases the necessary motions to set aside the judgment, affidavits and bonds for appeal—an Herculean task which occupied plaintiffs two or three days in accomplishing; that Gordon promised to grant the appeals; that subsequently Gordon raised some objection to the bonds; but having had them satisfactorily explained to him, promised to grant the appeals. That the justice, however, instead of do-

ing this, subsequently issued, executions on all these judg-, ments, and the property of the R. R. Co. was levied upon and advertised for sale.

Plaintiffs then proposed to prove by the witness that they then brought suit in the Common Pleas Court of Livingston County to enjoin, and did enjoin the sales under such executions; but the R. R. Co. objected on the ground that such services were not alleged in the petition. This objection was overruled, said defendant excepted, and the testimony was admitted. And under a like objection of said defendant and with the additional one that the necessity for such services was created by the blunder of plaintiffs, the witness was permitted to testify that upon a change in constables the property was again advertised for sale, and plaintiffs again sued out an injunction from said Common Pleas Court, to prevent a sale of said property, and said defendant again excepted. Said Turner, also under like objection and exceptions of said defendant, testified that they the plaintiffs, sued out a mandamus to compel said Gordon, the justice of the peace to grant said appeals; that the first injunction suit, and the proceedings for a mandamus were decided adversely to the R. R. Co., and plaintiffs took those cases by appeal to the Supreme Court; that the second injunction proceeding, was still pending in the Common Pleas Court when the suits before the justice of the peace were settled and adjusted; that the services rendered were worth more than $400, the amount charged, and that Noland on the part of Noland and Moore, agreed to allow plaintiffs that amount. Said Turner then, under the objections of said defendant that the authority of Ballew, the treasurer of said R. R. Co., to bind said Co. had not been proven; that he had employed plaintiffs on behalf of said defendant, was allowed to testify that said Ballew was in the office of plaintiffs while one of said injunction suits was pending, and promised to pay plaintiff's fees and charge the same to Noland & Moore who were then solvent men, on a contract with the R. R. Co. which had the funds of said Noland & Moore then in its hands. And said witness further testified

that the suits were begun in June, 1870; that Noland & Moore alone were responsible for the debts then sued for; that witness first went into the suits as attorney for said R. R. Co.; that he only had the authority of the latter dated June 10th, 1870, to act as such attorney; that Noland & Moore also employed plaintiffs to attend to the cases referred to; that Shanklin wanted witness to ventilate the matter; that prior to that time witness had been employed by the R. R. Co.; that he did not understand that Noland & Moore were to pay plaintiffs; that witness signed the name of the R. R. Co. to the bonds, by Turner & Collier, and witness thought the bonds bound the R. R. Co., and if not that it bound plaintiffs; that it was Noland & Moore's business to defend the suits, in which there was some $13,000 sued for, and that he never presented his bill to said Co., nor demanded a fee from it, or its agents or officer, except what was said to Ballew.

J. H. Shanklin was then introduced as a witness by plaintiffs, and testified that in the summer of 1870, Ballew was the treasurer of the R. R. Co., witness, the president and attorney, and transacted its executive business; that Ballew sometimes paid claims which had not been allowed by the Board, and the Board usually allowed such claims; that Ballew had no authority to employ attorneys, nor to pay them for the R. R. Co., and that on two or three occasions, he (Ballew) came to Chillicothe with means to pay the litigated claims, if necessary to prevent the sale of the R. R. property under the executions referred to by Turner.

Collier, one of the plaintiffs, was then introduced as a witness, and testified that about the time these suits were instituted, Noland & Moore employed him to defend them, and they stated that they were authorized by the R. R. Co. to employ him, and that said Co. had since then recognized him as its attorney; that the executions referred to by Turner, were issued against the Co.; that the labors of himself and co-plaintiff were great in getting up the appeals which, in the opinion of witness, were skillfully perfected; that the bonds were good, and Noland & Moore's names on them as principal,

and that witness was present when the conversation referred to by Turner, took place with Ballew. The R. R. Co. here objected on the same ground as before, to any declaration made by Ballew; but this objection was overruled, and the witness permitted to testify, and said defendant excepted. Witness then stated that Ballew was solicitous that the injunction should succeed; provided that the R. R. Co. would pay for their services, and told them to go ahead and make the best fight they could. And the witness further testified that the services rendered by plaintiffs were worth $400; that he appealed in the cases at the instance of Noland & Moore; was recognized by the R. R. Co. as its attorney, July 19th, 1870, and prior to that time had appeared in the suits; that witness demanded a fee of the Co.; that he did not know in what capacity Turner acted, though he understood he was attorney for the Co.; that Turner assisted him in getting up the mandamus; that the injunction and mandamus were pending when the cases were compromised, and that Turner and himself got letters and a power of attorney, approving their action in the cases, and that he had never heard any objections made, etc.

The plaintiffs rested, and the R. R. Co. introduced J. H. Shanklin as its witness, who testified that at the time plaintiffs claim to have rendered services, he was president and attorney of the said R. R. Co.; that prior to writing the letters to Turner of June 10th, 1870, he had given Noland & Moore authority to use the name of the Co. in resisting the claims of some hands who had filed liens on the road; that he had been advised that Noland & Moore had employed or would employ plaintiffs to defend said suits; that on learning from a messenger that Gordon, the justice, would not permit Noland & Moore's attorneys to appear without authority from witness, he wrote two letters to Turner, one for his use in court and the other with some private advice; that the letter dated June 10th, 1870, in evidence might be one of the letters, though witness thought he had expressed himself more unequivocally as to by whom the fees were to be paid; that the next witness

heard from the suits was by letter directed by plaintiffs to No-
land & Moore and witness, to which the letter of witness of
July 19th was a reply; that during the week after said letter
was written, witness talked with plaintiffs, who informed him
that Gordon had refused to grant the appeals; that witness told
them that the R. R. Co. would not act in the matter further
than to permit Noland & Moore to use its name in their de-
fense; that the Co. had no interest in those suits as N. & M.
were bound by their contract to keep the road clear of all liens;
that the power of attorney was executed at the request of
plaintiffs; that he was willing to aid, and hence the letter and
power of attorney; that he distinctly understood that plain-
tiffs were defending the suits for Noland & Moore, and were
only using the name of the Co., as a necessity; that plaintiffs
never demanded any fee of him, and that he afterwards com-
promised the cases, having doubts whether the appeals could
be enforced.

Here a letter from Turner, one of the plaintiffs, dated Octo-
ber 15th 1870, to said Shanklin and to Noland & Moore war
introduced, requesting that a power of attorney should be
made by the R. R. Co. to plaintiffs, recognizing and ratifying
the appeal bonds which they had executed, and empowering
them to execute new bonds, and stating that said Turner was
aware that the R. R. Co. was not especially interested in the
appeals, &c., &c.

The said R. R. Co. then read in evidence a clause from the
contract between said Co. and Noland & Moore, by which the
latter agreed to save the former harmless as to claims for la-
bor done or materials furnished, and giving the Co. the right
to retain a sufficient amount of money to discharge such
claims. This was all the evidence.

The defendants then asked their first instruction in the na-
ture of a demurrer to the evidence to the effect that the plain-
tiffs having failed to establish a partnership or any other rela-
tion between them at the time the services were performed,
which would entitle them to a joint action against any of the
defendants, and having failed to prove that anything was due

them jointly, the jury should find for defendants, which was refused and defendants excepted.

The fourth instruction was to the effect that if the services were so unskillfully performed and in such manner as to be worthless, the jury should find for defendants.

And the seventh required the jury to disregard all testimony as to the services of plaintiffs in the mandamus and injunction suits. These instructions being refused also, defendants again excepted.

The court then, at the instance of the defendants, gave five instructions, (two of them with but slight and just modifications) which presented the defendant's view of the law of the case very favorably, and then gave, against the objections and exceptions of the defendants, several instructions on behalf of the plaintiffs in which, taken as a whole, there is no material error, and the jury thereupon found for the plaintiffs, and after moving unsuccessfully for a new trial and in arrest, defendants bring this cause here by appeal.

There was no error in the action of the court in admitting testimony showing that plaintiffs had rendered services in other cases than those mentioned in the exhibit annexed to the petition. Aside from the fact that the proceedings by mandamus and to enjoin were inseparably blended with, and in furtherance of the proper defense of the suits before the justice, the defendants failed to take the statutory steps, showing that they had been misled by the alleged variance between the pleading and the proof. An affidavit setting forth in what respect a party has been misled, is the *only test,* under our statute of the materiality of the discrepancy between *allegata and probata.* And even then the variance in not necessarily fatal; for the court may order an amendment upon terms. (2 W. S., § 1, p. 1033; Fischer vs. Max, *et al.,* 49 Mo., 404.)

And by an examination of section 2 of the act referred to, it will be seen that an amendment is not, where the variance is immaterial, absolutely essential ; for " the court may direct the facts to be found according to the evidence." And for the

reasons above stated there was nothing incorrect in the refusal of the seventh instruction of defendants.

The court very properly refused to give the first instruction asked by defendants, as there was not an entire absence of testimony on the point referred to therein; and the court, had it given that instruction, would thereby have usurped the province of the jury and taken the case away from these triers of the facts.

There was nothing on which to base the assumption that plaintiff's services were unskillfully performed, or were worthless, and consequently the fourth instruction of defendants was unsupported by the testimony, and was therefore rightly refused.

The testimony as to the promises of Ballew, the treasurer of the R. R. Co., was competent, and there was no error in its admission. (Western Bank vs. Gilstrap, 45 Mo., 419, and cases cited.)

The power of Attorney to the plaintiffs from the R. R. Co., was clearly admissible, although made at a date subsequent to the peformance of a large portion of the services. That the recognition and ratification of a previously performed act are tantamount to its antecedent authorization, is a proposition too plain for discussion or the citation of authorities.

The case was fairly tried; the verdict was supported by the evidence, there was no error committed "materially affecting the merits of the action, and the right party in the court below had judgment, which will be affirmed. Judge Vories not sitting. The other judges concur.