Briggs v. Munchon.

Jane Briggs, Respondent, *vs.* Charles W. Munchon, Appellant.

1. *Sales—Statute of frauds—Auctioneer—Memoranda—Names of parties—Principal and agent—Description of property.*—The memorandum of a sale of land by an auctioneer, as made by his clerk, was prefaced by an advertisement, pasted in the book, which contained the name of the tract sold, which was well known, and a partition of which was recorded, and stated that it was sold by order of the heirs of the estate to which it belonged, naming it; described its location in general terms, and referred to lithographic plats to be ready at the day of sale. On the margin was a note, "sold on account of A." On the sale, the clerk made a minute immediately following the advertisement as follows: "Lots 1 and 2, C. D," (the name of the purchaser,) "111, $15, $1,665.00.". It was admitted by the pleadings, that the auctioneers were the agents of the heirs of said estate. *Held,* that the note on the margin did not indicate that the memorandum of sale showed an agreement of the purchaser with A.; it might show that A. had an interest without necessarily implying that he was the contracting party; that the memorandum and the advertisement taken together sufficiently disclosed the principal for whom the auctioneers acted, and if they did not, parol evidence was admissible for that purpose; that the name of the tract being well known, and by its very title referring to a partition and plat which were of record, was a sufficient description of the property for the purposes of the memorandum; and that the writing of the name of the purchaser by the auctioneer's clerk was a sufficient signature under the Statute of Frauds.

*Appeal from St. Louis Circuit Court.*

*R. S. Voorhis,* for Appellant.

The defense in this case arises under the Statute of Frauds. (Wagn. Stat., p. 438, § 5.)

The "Field Book," or so much as purported to contain the contract sued on, was inadmissible to prove the contract pleaded in the petition. That contained in the "Field Book," and put in evidence is at variance with the contract set up in the petition. First—The contract put in evidence, on its face shows a contract with John Riggin, Jr. He is the contracting party. Parol proof was introduced to show, that although John Riggin, Jr., is named in the memorandum as the contracting party, he was not such, but that Jane Briggs, not at all named in the memorandum, was the contracting party. The evidence was clearly inadmissible. (Higgins vs. Senior, 8 Mees. & W., 843; Wilson vs. Bailey,1 Handys, 178 ; Kean vs. Davis, Spencer, N. J., 425.)

Second—The name of the plaintiff does not appear in the memorandum as the contracting party. When parol proof is admitted to explain the memorandum offered in evidence so as to substitute Jane Briggs for John Riggin, Jr., for this is really what has been done in the case, additional parties are introduced and the memorandum is made a joint contract by several persons, instead of a contract with Jane Briggs, which is attempted to be proved by the memorandum. In other words, a contract with several persons jointly is introduced to prove a contract alleged to have been made by one person, which is a fatal variance. The memorandum shows a joint contract, whereas a personal contract is pleaded. (Sugd. on Vendors, 130; Davis vs. Symonds, 1 Cox. Ch., 409; Story on Sales, §§ 466-7; Hilliard on Sales, p. 482, § 28; Hicks vs. Whitmore, 12 Wend., 548; Craig vs. Godfrey, 1 Cal., 415; Horton vs. McCarty, 53 Me., 394; Buckmaster vs. Harrop, 13 Ves., 456; Smith vs. Arnold, 5 Mason, 414.) Story on Sales, § 257, Note 1, cases cited.)

The printed portion of the memorandum shows two facts patent. First—That the sale was on account of the heirs of the Briggs estate; a sale by the heirs of Briggs. Second—That the sale was of a joint property. It implies a joint property, undivided, in the heirs of Briggs. (Story on Sales, § 257; and Note 1, cases cited; *I.d*, § 46.)

*T. K. Skinker*, for Respondent.

Whatever the words "Sold for account of John Riggin, Jr," might import if unexplained, the explanation of Riggin's connection to the transaction, as detailed by himself, clears away any inference that he was the other party to the contract. He was no more than a speculator at whose expense the sale was to be conducted and to whom the auctioneers were to look for compensation for their services. His testimony cannot be objected to by defendant as explaining a writing by parol evidence, because it was drawn out on cross-examination by defendant himself.

Whether the language of the memorandum is sufficiently precise as to the ownership or not, can make no difference.

Granting it to be equivocal, it is certainly legitimate to resort to the pleadings for any facts that may explain it, and the pleadings and evidence clearly show it. (Browne Stat. Frauds, § 350.)

The memorandum shows the property sold was in the Briggs Estate and was lots 1 & 2, block 3. The Briggs Estate is in St. Louis county, Missouri, and was partitioned by commissioners and subdivided into lots, and the plat of the subdivision recorded in the office of the Recorder of Deeds for the county. The lots could not be more certainly identified.

As to the objection, that the name of the plaintiff does not appear in the memorandum;—Defendant's name appears in full in the memorandum.—Plaintiff's name does not appear, but in place of it we find those of her admitted agents, Belt and Priest. That is enough. If the name of the agent appears, that makes it the contract of the principal. The principals need not appear, whether the case comes under the statute of frauds or not. (Cato vs. Hutson, 7 Mo., 142, 148; Higgins vs. Dellinger, 22 Mo., 397; Wiley vs. Robert, 27 Mo., 388; Higgins vs. Senior, 8 Mees. & W., 844; Trueman vs. Loder, 11 Ad. & Ell., 589; Ford vs. Williams, 21 How., 289; Yerby vs. Grigsby, 9 Leigh, 391; Hubbert vs. Borden, 6 Whart., 79; Bank of U. S. vs. Lyman, 20 Verm., 673, 674; Williams vs. Bacon, 2 Gray, 393.)

Where the writing does not purport to be the contract, but only a memorandum of it, resort may be had even to parol evidence to explain it. (Rollins vs. Claybrook, 22 Mo., 405; Moss vs. Green, 41 Mo., 389.)

As a defendant may be charged on a contract wherein only his agent's name appears, so may a plaintiff avail himself of such a contract and maintain an action on it. (Browne Stat. Frauds, § 373; Bateman vs. Phillips, 15 East., 272; Salmon Falls Manuf'g Co. vs. Goddard, 14 How., 446; New Jersey Steam Navig'n Co. vs. The Bank, 6 How., 380; York County Bank vs. Stein, 24 Md., 464; Brooks vs. Minturn, 1 Cal., 481; Beebe vs. Robert, 12 Wend., 413; Taintor vs. Prendergrast, 3 Hill,, 72; Sims vs. Bond, 3 Barn & Ad., 38;

'Cathay vs. Fennell, 10 B. & C., 672; Beckham vs. Drake, 9 Mees. & W., 79; Same Case, 11 *Id.*, 315; 1 Parson's Bills & Notes, 102; Higgins vs. Dellinger, 22 Mo., 397; Higgins vs. Senior, 8 Mees & W., 844.)

When the fact of agency is expressly admitted, as in this case, there can be no doubt that an unnamed principal can avail himself of it.

SHERWOOD, Judge, delivered the opinion of the Court.

Action to recover of defendant the amount bid by him, at auction sale, for lots 1 and 2 in block 3 of the Briggs' estate, in St. Louis County, Missouri. Belt & Priest were the auctioneers, and at the trial, the plaintiffs, having established its authority, read in evidence so much of a book kept by them, as contained the entries of sales made by them on the 29th day of September, 1870, and especially the entry of the sale of the lots alleged to have been sold to the defendant.

The book was entitled: "Auction Sales, Belt & Priest, 1869, 1870." The particular entry was as follows: "Thursday, September 29th, 1870. Briggs estate. Positive and unrestricted sale of lots for non-resident heirs. Sold for account of John Riggin, Jr. September 29, 1870. On the premises. We are directed by the heirs of the Briggs estate, to sell at public auction, on the premises, all the lots belonging to said estate unsold. This subdivision is situated on both sides of the Clayton road, a short distance west of the intersection of the Clayton and Manchester roads, about half a mile west of the city limits, and a short distance north-east of the Laclede race track subdivision. There are about 150 lots, 25 by 150 feet, fronting wide streets and alleys. The terms will be one-third cash, balance in one and two years, with six per cent. interest. The title is perfect; warranty deeds will be given. The horse railroad from Summit Avenue and Market Street to Shaw's Garden, will be in operation in a short time, affording easy access to the property from the center of the city. The beautiful location, and the accessibility of this property, recommend it to all seeking suburban lots. Lithograph

plats are now being prepared, and will be ready for distribution on the 15th inst. Belt & Priest, 219 Chestnut Street. Block 3, lot 1 and 2. C. W. Munchon, 111 $15.00,—$1665,00."

The above recited advertisement of Belt & Priest, was pasted in their book on the morning of the day of sale, and the written memorandum, as to John Riggin, was written before the sale occurred; and that as to whom the lots were sold, and price, etc., were written therein on the same day, and at the time of the occurrence of the sale, by the clerk of the auctioneer. The sale took place at the time advertised, and defendant, who lived within a short distance of the property, and owned land adjoining the Briggs estate, was present on the ground where the lots were being sold, bid on them, and they, after a considerable contest, were stricken off to him at the price above indicated. Plats of the lots to be sold were circulated at the time of the sale, and the terms thereof were announced prior thereto orally, also by the advertisements in the papers and by hand-bills posted on the property. It was averred in the petition and not controverted in the answer, that the lots in question were the property of the plaintiffs, situate in St. Louis County Missouri, and were part of the "subdivision known as the Briggs Estate, according to the report and plat of the commissioners in partition, in the case of Edmond B. Briggs. et al., ex parte., recorded in the office of the recorder of deeds for said county, in book No. 321, page 146," etc. Nor did the answer deny the allegations of the petition to the effect that Belt & Priest were the agents of the plaintiff, duly authorized by her to make the sale referred to. The agency of Belt & Priest was also established during the progress of the trial, and also that the Briggs heirs owned separate interests which had been allotted to them in severalty, by the commissioners appointed for the purpose of making partition of the estate among those entitled.

Various objections to the introduction of the memorandum of sale were urged by the defendant, who still insists that those objections were tenable, and should have prevailed. John Riggin's connection with the sale and the cause of his

name appearing in the margin of the page which evidenced that sale, was sufficiently and satisfactorily accounted for by the testimomy of Riggin himself, drawn out by the defendant on cross-examination. It seems that the heirs had agreed to give Riggin all that the property would bring above a certain figure, he to defray the expenses of the sale, and to make good any deficit which might occur. This testimony having been elicited by defendant, he cannot complain if it had a seeming tendency to vary, explain or control a written instrument by parol evidence. But it is not true in point of fact, that the memorandum shows on its face an agreement with Riggin and not with plaintiff. The idea of plaintiffs being the contracting party is not, by any means, at variance with the idea that Riggin was, on the occurrence of a certain contingency, to receive a portion of the proceeds of the sale. Nor do the words employed, themselves indicate, if they are fairly construed, that he occupied the attitude of contractor.

This disposes of the defendant's first objection. The second and third objections may be disposed of together. There was no necessity for the name of the plaintiff to appear in the memorandum, and this is the case, notwithstanding that the statute of frauds, as a general rule, requires the names of both the contracting parties. (Brown on Stat. Fr., § 372.) Belt & Priest, as before seen, were by the pleadings admitted to be the agents of the plaintiff, and violence must be done to all fair and reasonable rules of construction in the attempt to·show that the advertisement, which was incorporated into and became a part of the memorandum itself, did not disclose in a very evident manner, their agency. And to prove who their principal was, resort was even allowable to parol evidence; such resort had no tendency in contravention of the rule forbidding the introduction of extraneous evidence of that sort in certain cases. In Higgins vs. Senior, (8 Mees. & Welsb., 844) Baron Parke said: "There is no doubt, that where such an agreement is made, it is compctent to show that one or both of the contracting parties were agents for other persons and acted as such agents in making the contract, so as to give

the benefit of the contract on the one hand, and to charge with liability on the other, the unnamed principals, and this, whether the agreement be or-be not required to be in writing by the statute of frauds, and this evidence in no way contradicts the written agreement. It does not deny that it is binding on those whom, on the face of it, it purports to bind, but shows that it also binds another, by reason that the act of the agent, in signing the agreement in pursuance of his authority, is, in law, the act of the principal." (See to the same effect, Trueman vs. Loder, 11 Adolph & Ell., 589; Ford vs. Williams, 21 How., 287, and cases cited; Higgins vs. Del linger, 22 Mo., 397.)

And it is but a legitimate corollary from the above enunciated rule, which permits an undisclosed principal to avail himself of the contract made by his agent; and. maintain action thereon, although the contract be written, and the evidence, adduced to disclose the relation which the apparent bears to the real principal, is parol. (Bateman vs. Phillips, 15 East., 272; Bro. Stat. Fr., § 373.)

These observations, in full accord with the the above cited authorities, effectually remove any ground of objection because of the non-appearance of the plaintiff's name in the memorandum, and because of the employment therein of the term, "heirs of the Briggs estate." For if the admissibility of parol evidence to disclose an unknown principal be granted, any alleged obstacle or ambiguity vanishes upon its introduction.

This view renders a discussion of defendants fourth and. fifth objections unnecessary. Passing, then, to his last ground why the memorandum should have been rejected, which is, that the description of the property is uncertain and indefinite ; that remaining point will now be examined. And in the course of such examination, we must not be unmindful of the established and admitted facts heretofore mentioned, that the lots concerning which the present suit arose, were part of the " subdivision known as the Briggs estate ;" that partition had been made thereof by commissioners, whose re-

port and plat, in the *ex parte* cause of E. B. Briggs and others, was of record in the county where the proceedings for partition were instituted.

In Wiley vs. Robert, (27 Mo., 388) the memorandum of sale was in these words: "Partition, lands, Louis Robert vs. B. F. Adams. Lot No. 11—274, 80—100 a. Louis Robert, $10.50 per a.—2,885.40." And it was held sufficient; the court observing that "the title of the partition suit being placed at the head of the memorandum of the sale, connected the papers in that case with the memorandum, for the purpose of this inquiry, as perfectly as if they had been specially referred to and made a part of it." (The doctrine of the case just cited, was afterwards re-affirmed in 31 Mo., 212, upon the cause coming up here for the second time.)

That case is not distinguishable in principle from the one at bar. Here the advertisement, which was part and parcel of the memorandum, refers to the lots yet remaining unsold, belonging to the subdivision, of the "Briggs estate." That such subdivision•was well known by that name, and its location and boundaries a matter of record, stands admitted. Greater certainty than this could not, with any show of reason, be demanded. The mention of county and State in the memorandum, would not have aided in the identification of the property sold; those usual methods of defining the situation of the land sold, are not absolutely requisite. The mode employed in the present instance was, to all intents and purposes, equally efficient and significant. The plats mentioned in the notice of sale could, under the circumstances, only have reference to the lithographic copies of the one filed in the recorder's office by the commissioners in partition; and for this reason, such copies were admissible in evidence, although, as seen from the foregoing remarks, their admission, the identity of the property having been otherwise sufficiently established, was not, perhaps, strictly necessary. It was competent for the clerk of the auctioneers to write down the name of the defendant in the sale book, at the time the sale took place, and this was a sufficient signature, within the statute. And

the act of the clerk in this respect, was that of the auctioneers, and properly declared on as such, so there was no variance between the matters alleged and those proven, and even had there been any variance, the steps pointed out by the statute for taking advantage of it, were not pursued. (2 Wagn. Stat., § 1, p. 1033 ; 49 Mo., 404 ; 51 Mo., 501 ; see Sm. Merc. Law, 587 ; Bird vs. Boulter, 4 B. & Ad., 443 ; Emerson vs. Heelis, 2 Taunt., 38 ; 7 East, 558 ; Gill vs. Bicknell, 2 Cush., 355.)

Having discussed all the points in this record which are of any practical importance, and being unable to discover any error, the judgment must be affirmed. Judge Wagner absent ; the other judges concur.