JOHN S. BROWN, Respondent, v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Appellant.

| 31a | 661 |
| 32a | 448 |
| 31 | 661 |
| 52 | 338 |

Kansas City Court of Appeals, July 2, 1888.

1. PRACTICE—PLEADING — CONTRIBUTORY NEGLIGENCE → MATTER OF DEFENCE AND MUST BE PLEADED—CASE ADJUDGED.—Contributory negligence is a matter of defence and must be pleaded; yet if such negligence is not pleaded and the plaintiff's own evidence discloses a clear case of contributory negligence, he must fail in his action. But it was not error for the court to omit the hypothesis of contributory negligence in plaintiff's instruction as it did in this case.

2. ——— ——— EVIDENCE RECEIVED WITHOUT OBJECTION— VARIANCE.—Unless there was a failure of proof of the cause of action, "in its entire scope and meaning," and when evidence complained of was received without objection this court will not reverse for such cause. In the case of a variance which may be cured by amendment, defendant's remedy is by affidavit proving to the satisfaction of the court that it was misled, as provided for by the statute. (Rev. Stat., sec. 3565.)

3. DAMAGES—MEASURE OF AS TO LOSS OF WIFE'S SOCIETY—HOW DETERMINED.—There is no exact standard by which to measure the value of a wife's society. The amount to be recovered must be left to the enlightened judgment of the jury, who must, under the evidence before them, fix upon a reasonable sum.

*On rehearing.*

4. PLEADING—ISSUES—INSTRUCTIONS MUST BE IN ACCORDANCE WITH THE ISSUES—CASE ADJUDGED.—It devolved on the defendant in this case to plead contributory negligence in order to raise such issue. The answer not having tendered such issue, and the evidence not being such as to justify the trial court in taking the case from the jury on the ground that plaintiff's evidence showed contributory negligence, it could not devolve on plaintiff in framing his instructions to submit such issue to the jury. Instructions must be drawn in conformity with the issues.

APPEAL from Clinton Circuit Court, HON. JAMES M. SANDUSKY, Judge.

*Affirmed.*

The case is stated in the opinion.

STRONG & MOSMAN and JOHN W. HENRY, for the appellant.

I. The court erred in refusing to direct a finding for defendant as prayed. There was a total failure of proof that the crossing was not a "good and sufficient crossing"; or that defendant permitted it to remain in a dangerous condition, or that plaintiff's wife was injured because of such condition. *Field v. Davis*, 27 Kan. 405. The plaintiff's own evidence showed that the casualty was caused by the carelessness of plaintiff's wife. *Buesching v. Gas Co.*, 73 Mo. 229; *Milburn v. Railroad*, 86 Mo. 109; *Lawrence v. Railroad*, 42 Wis. 322; *Fox v. Gastonbury*, 29 Conn. 204. There was no proof to connect the casualty with a defective crossing.

II. The court erred in giving plaintiff's instructions one and two. (*a*) Under these, the jury were bound to find for plaintiff, regardless of the evidence as to negligence of his wife, contributing to cause the accident. The court was bound to submit that question to the jury. They instructed the jury "to find the issues for plaintiff without being thereby further required to

pass upon and consider the conduct of the plaintiff in the premises, and the plaintiff's knowledge, if any, of the broken tie-beam, and the unsafe and dangerous condition of the scaffolding. We do not think a conclusion upon the whole case was, under the issues and evidence, authorized by a finding of the facts thus submitted." *Sullivan v. Railroad*, 88 Mo. 181, 182. Each of these instructions purported to cover the whole case, and each is bad under the rule announced in Sullivan case, *supra*, following *Thomas v. Babb*, 45 Mo. 384; *Getz v. Railroad*, 50 Mo. 472; *Singer Co. v. Hudson*, 4 Mo. App. 145; *Henry v. Bassett*, 75 Mo. 89; *Bank v. Murdock*, 62 Mo. 70, 73, and cases cited. ( *b* ) In neither of these instructions are the jury required to find that, by reason of the other facts submitted, plaintiff suffered any damage, pecuniary or other. "An instruction which hypothecates a state of facts, and upon their existence directs a verdict, is improper, unless all the facts are hypothecated, which are necessary to sustain a verdict." *Thomas v. Babb, supra; Sullivan case, supra*, and cases therein cited. ( *c* ) There was error in each of these instructions in that it submitted to the jury the question whether the crossing was "reasonably safe and convenient for public travel", and also declared to them that the law required defendant to so construct and maintain it, as that it "would be reasonably safe, and convenient for public travel." This required more than was claimed in the petition, viz., in respect to convenience. This declared a duty not by law imposed on defendant. There was no evidence that the crossing was unsafe, and, therefore, that question should not have been submitted to the jury. ( *d* ) "In every case it must appear * * * that the person complaining was at the time in the exercise of ordinary care." *Tritz v. City*, 84 Mo. 645; *Craig v. Sedalia*, 63 Mo. 417; *Buesching case*, 73 Mo. 229. This question was not propounded to the jury in any form. *Gibson v. Railroad*, 76 Mo. 282. ( *e* ) The first instruction put the duty of defendant too broadly—and considering the

evidence the jury must have been misled by the instruction. "Defendant was only bound to keep such parts of the road in repair as are necessary for the convenience and use of the traveling public." *Tritz v. City*, *supra; Streeter v. City*, 23 Mo. App. 250 ; *Craig v. Sedalia*, 63 Mo. 419 ; *Brown v. Glasgow*, 57 Mo. 157 ; *Bassett v. St. Joseph*, 53 Mo. 290; *Heckler v. St. Louis*, 13 Mo. App. 279 ; *Ellis v. Railroad*, 17 Mo. App. 131.

III.   The court erred in giving plaintiff's third instruction.   It does not limit damages recoverable within the allegations of the petition ; and the court misled the jury in so failing to thus limit.   *Wright v. Jacobs*, 61 Mo. 19 ; *Bank v. Murdock*, 62 Mo. 70 ; *Waldhier v. Railroad*, 71 Mo. 514 ; *Crews v. Lackland*, 67 Mo. 619.   Besides, it is in conflict with the instruction given by the court of its own motion and must have misled the jury.

IV.   The court erred in giving the instruction on its own motion, because it was in conflict with other instructions given, was variant from the petition, and does not limit the damages to such as are recoverable. It was error to submit to the jury to find plaintiff's "pecuniary loss arising from loss of wife's services or society," because there was not one word of testimony as to the value of her services or society.   The jury were compelled to conjecture as to that.   *Nichols v. Winfrey*, 79 Mo. 553 ; *Callahan v. Warne*, 40 Mo. ; *Raysdon v. Trumbo*, 52 Mo. 35 ; *Givens v. Van Studdiford*, 4 Mo. App. 499.   This error made the way plain for the wrong done defendant in the excessive verdict returned, viz., eleven hundred dollars.

V.   The court erred in overruling defendant's motion for a new trial.   The verdict was grossly excessive.   Plaintiff gave no satisfactory evidence as to expending more than fifty dollars, and no evidence at all as to value of "services and society" of his wife, nor any data from which a plausible conjecture could proceed to measure his loss.   He stated in his petition that the loss was for a period of three months only.   It

is absurd to say that he suffered pecuniarily on that account at the rate of more than four thousand dollars per annum. The verdict is, therefore, unsupported by evidence. The demurrer should have been sustained for reasons heretofore given. The court erred in overruling motion in arrest of judgment. The instructions changed the issues, enlarged the issues, ignored some issues, and introduced others, so that the whole record did not support or authorize the judgment. Defendant prays reversal of judgment on account of errors assigned in its said motions respectively.

THOS. J. PORTER, for the respondent.

I. The court properly refused to direct a finding for the defendant as prayed. "To authorize such interference, the evidence must not merely be weak, but there must be no evidence." *Brink v. Railroad*, 17 Mo. App. 195, and authorities there cited. In passing upon a demurrer to the evidence, "the court is required to make every inference of fact from the evidence in favor of the party offering it which the jury might, with any degree of propriety, have inferred in his favor." *Buesching v. Gas Co.*, 73 Mo. 219; *Barton v. Railroad*, 82 Mo. 253; *Donohue v. Railroad*, 91 Mo. 357.

II. The pleadings raise no issue as to contributory negligence, and there could be no finding against the plaintiff on the ground of contributory negligence, unless "it clearly appears from the evidence, without any contradiction," that his wife was guilty of such contributory negligence as would preclude a recovery. *Drain v. Railroad*, 86 Mo. 574; *Petty v. Railroad*, 88 Mo. 306; *Donovan v. Railroad*, 89 Mo. 147; *Brown v. Railroad*, 23 Mo. App. 209. The case last referred to above rested upon the same facts as this, and the evidence is substantially the same.

III. The law presumes, in the absence of proof to the contrary, that Jane E. Brown was, at the time of the accident, exercising ordinary care and prudence, and

she "had the right to presume that the crossing was reasonably safe and to act on such presumption." *Brown v. Railroad*, 23 Mo. App. 209 ; *Moberly v. Railroad*, 17 Mo. App. 518.

IV.   There is no error in giving instructions one and two for plaintiff.   They do not "instruct the jury to find the issues for the plaintiff," but submit to the jury all the issues made in the pleadings.   The duties of defendant with respect to crossing of highways are defined by sections 765 and 807, Revised Statutes.

V.   The question of contributory negligence is not in issue under a general denial.   *Donovan v. Railroad*, 89 Mo. 147 ; *Sweigert v. Railroad*, 75 Mo. 475.

VI.   Instructions should not be submitted upon an issue not made by the pleadings.   *Vanhooser v. Berghoff*, 90 Mo. 487.   But if required by the pleadings, the requirement is met by instructions given for defendant. *Muehlhausen v. Railroad*, 91 Mo. 346.

VII.   Even if the instructions complained of are erroneous, a new trial ought not to be awarded where they worked no harm.   *Brink v. Railroad*, 17 Mo. App. 197 ; *Keen v. Schnedler*, 92 Mo. 516 ; Rev. Stat., sec. 3775.

VIII.   In estimating the expense incurred by reason of the injury, the jury were authorized to consider the necessary expenditure of money by plaintiff for hands to do his own work while he attended his wife. *Smith v. St. Joseph*, 55 Mo. 459.

ELLISON, J.—This action is for damages resulting to plaintiff by reason of personal injuries suffered by his wife resulting, as is alleged, from an unsafe, insufficient, and dangerous crossing constructed on a public highway across defendant's track.   The answer was a general denial.   There was a judgment for plaintiff for the sum of eleven hundred dollars and defendant appeals.

It appears from the evidence that plaintiff and his wife were moving from the south part of this state and were traveling westward in two farm-wagons at the time

of the injury. Plaintiff was driving the wagon in advance and his wife was driving the other, following him ; that they approached the crossing from the east, he passing over; that she drove upon the eastern approach, but in passing over the track down the western approach her wagon turned over, rolled down the embankment inflicting painful, if not serious injuries upon her.

The objections to plaintiff's first and second instructions are, that they did not submit the question of contributory negligence. Contributory negligence, as has been frequently held, is a matter of defence and must be pleaded. *Donovan v. Railroad*, 89 Mo. 147. It is true, as stated in *Milburn v. Railroad*, 86 Mo. 104, that though such negligence is not pleaded, yet if the plaintiff's own evidence discloses a clear case of contributory negligence, he must fail in his action. The question then in this case is, does the evidence for plaintiff show contributory negligence on the part of Mrs. Brown. It is shown she was an ordinarily good and careful driver; that the team was gentle, and that she had driven it one hundred and sixty miles. The crossing and its surroundings and condition is described by the witnesses with particularity.

Thomas Wright testified as follows : "I live near the crossing in question. The railroad crosses the state road, known as the Haynesville and Plattsburg road. Before the railroad was built, the road was level and safe. The road crossed a sort of bottom before the railroad was built. I have known it for forty years. I cross it every Sunday. I lived there at the time of the accident. I was road overseer ; and the road was in my district. In crossing from the east, one has to keep to the south side of the east approach to avoid a hole, which is on the north side of that approach. When the track is reached, unless you are very careful, the wheel will drop down off the plank, and not strike solid ground. The plank extends twenty inches south, beyond the south brink of the west approach. The east

approach reaches the track in a curve, and a hole on the
north side compels bearing south, and throws travel
towards the south brink of the west approach. There is
more danger of going off the west approach, because the
south brink of that approach is from three to four feet
north of the south line of the east approach. To reach
the west approach safely, one would have to bear off to
the north, after getting on to the railroad track with a
long wagon, but not so much with a short one. I
measured the height of the fill on the south side of the
west approach with a plank, and found it about seven
feet. I saw the roadmaster and asked him to fill up the
hole on the south side of the west approach; told him
about two carloads of dirt thrown in there, so as to
extend the west approach further south, would make
the crossing safe. He did not do so. The plank on the
west rail extends two feet beyond the fill, making the
west approach. If one pays attention before get-
ting on the track, he can go over without difficulty, but
he must make a turn after getting on the railroad track.
A long-coupled wagon has more trouble. I don't know
whether I notified the roadmaster before or after the
accident. Think it was before, but am not sure. Hav-
ing my recollection refreshed, by reference to my former
testimony in this case, I am satisfied it was before the
accident."

On re-direct examination the witness said : "To be
entirely safe in going over the crossing, it is necessary
to make a turn some to the north after getting on the
track, and drive the team beyond the plank on to the
end of the ties, where they are not filled with dirt."

Monroe Treason testified : "I live one and one-
half miles from the crossing and knew it in 1883, and
passed just after the accident. The east approach
comes up to the track in a curve. The crossing is wide
enough if it was not for the curve, and the fact that the
approaches are not opposite each other, one is liable to
pull off if he does not watch. The south brink of the
west approach is about four or five feet north of the

south line of the east approach. In coming up from the east one does not see the danger until he gets upon the railroad track, and if one is not acquainted with its condition he is liable to go off. Travel is thrown to the south on the west approach. The approach is wide enough and about seven or eight feet high, but the planks at the rails do not extend far enough north to give a safe landing on the west approach."

Jesse A. Wright testified: "I have known the crossing for twenty years, and knew it in November, 1883. Coming from the east side the approach curves to the track, then goes straight. A hole on the north side of the east approach compels one to pull in one direction, and when the track is reached he must pull the other way. One cannot see over the track when coming up the east approach. The curve in the east approach and the hole in the north side of it throws the wagon too far south."

On re-direct examination, the witness said: "If a person continues straight west over from the east side it would not be safe. One can't see all the way over. Must pull north to get over safely, One not familiar with the crossing is in danger of going over."

William Mott testified: "I am familiar with the crossing in question. Have always known it. The east approach is in a curve. It is scant nine feet wide the way they had it fixed. One has to turn towards the left to avoid a hole on the north side of the east approach, which has the effect to leave the wagon near the south side. At the railroad track the fill is from seven to ten feet high. The approach on the east extends out eleven feet and on the west about fourteen feet. The planks on the track are pine and the south end was broken. The wagon wheel jumped off the rail about one foot down where the end of the plank is broken off. The sign-posts are west of the track, one south and the other north of the roadway. The sign extended over the road and was from twelve to sixteen feet long. A person cannot see the west approach from

the east until on the railroad track. The sign-posts were about sixteen or eighteen feet from the track of the railroad. The surface of the west approach was not level, would call it oval. Started from the center of the traveled track toward the south."

J. D. L. Sparks, testified: "I know the crossing, and travel over it often. The road approached the railroad track in a curve from the east. The west approach is steep and narrow, and is further south than the east approach. Crossing from the east, one turns to the left. On reaching the railroad track of railroad the approach is in a curve. East approach is steep on the north side, and the west approach on the south side. Coming up, in a curve from the east, to avoid the steep place on the north side, with your team, the wagon is left near the south side. On reaching the track from the east, must turn north as far as team can go, in order to land safely on the west approach. Can't see the west approach, from the east, till the track is reached. A person driving in a covered wagon would have his view obstructed. Coming up the east approach, if you follow the direction given by the planks at the rails, you don't land on safe ground on the west approach."

On re-direct examination the witness said: "To get on to the west approach, one must go diagonally over the plank. To one knowing the track, and the necessity of keeping the team to the north of the track, it is no trouble to cross. Plank at crossing is about twelve feet long. One could cross anywhere on the plank. The bushes on the south side of the west approach are boxelder, briar, hazel, etc."

James E. Young testified: "I am acquainted with the crossing in question, have known it since 1867, and knew it in 1883. The public road crosses the railroad, at an angle from southeast to northwest. The approach is graded up several feet, and curves on each side of railroad track. On the west side is straight. On either side of the east approach were excavations. Don't know that it interfered with travel on east

approach. It would not interfere with safe landing on west approach. There is some danger in getting down west side, to a stranger. The danger arises from the fill on the west side, not extending as far south as on the east side, and the curve in the east approach, which will throw one too far south on the west approach. Don't think the excavation would interfere with one, unless a stranger not knowing the west approach. The south line of the west approach is one to two feet further north than the south line of the east approach."

Re-direct examination: "I have passed over it quite often. A stranger not familiar with it is liable to go too far south. There is no danger if the west approach is known. There is no obstacle in making the approach good on both sides of the railroad. There is no danger at all on east approach, the only danger is in coming on the west approach. I knew the road before the railroad was built, it was a plain bottom road."

The cross-examination of these witnesses was substantially as their examination in chief, except they stated that if the wagon had been kept in the traveled track the accident would not have happened, but they also said that, to keep the wagon in the traveled track, the team must be pulled out of it, on account of the turn, They also said the traveled track could be kept by one who was acquainted with the crossing.

When we consider that Mrs. Brown had a right to rely upon the safety of the crossing, and that defendant had not performed its duty in constructing and maintaining it, I am unable to see anything in the foregoing showing a want of due care on her part. She could not see the condition or location of the west approach while she was driving up the east approach. "In coming up from the east one does not see the danger until he gets upon the railroad track, and if one is not acquainted with its condition he is liable to go off," is the language of one of the witnesses, which is in substance stated by all and contradicted by none.

To my mind the evidence for plaintiff makes out a

remarkably clear case of neglect of a statutory duty on the part of defendant and fails *in toto*, to show any contributory negligence on the part of his wife. But it is urged that this evidence shows that if she had kept the wagon in the traveled track it would not have turned over. This is evident, but the testimony shows that on account of the east and west approaches not being opposite each other, and of the misleading position of the planks at the crossing, and that the danger could not be seen from the eastern approach, one unacquainted with the condition of the western approach will quite likely meet with just the accident that happened to Mrs. Brown. The evidence clearly establishes that if the horses drawing the wagon are kept in the track, the wagon, on account of the sharp turn, will go off. In order to avoid this the horses must be pulled sharply to the north, out of the traveled track. The inference to be drawn from all the testimony on this head, for plaintiff, is that one unacquainted with the western approach cannot cross with safety. This is in effect the statement of the witnesses, as expressed by one of them, "One not familiar with the crossing is in danger of going over." It will thus be seen that it was not error for the court to omit the hypothesis of contributory negligence in plaintiff's instructions.

The instructions are further objected to on the ground that they submitted to the jury the question whether the crossing was "reasonably safe *and convenient* for public travel." The primary meaning of the word convenient is fit, suitable, or adapted to use, and with this meaning it was not improper to use it in connection with the word safe.

Objection is made to plaintiff's third instruction, in that it does not limit the period of plaintiff's loss of service and society to three months, it being contended that the petition only claimed damages for a loss during that period. If we should concede that the petition is fairly subject to the interpretation given it by counsel,

he is in no position to complain of the instruction. Evidence fully as broad as the instruction was received without objection. There was no failure of proof of the cause of action "in its entire scope and meaning," but if the matter was material, it was, at most, only a variance, which might have been cured by amendment if attention had been called to it. Defendant's remedy was by affidavit proving to the satisfaction of the court that it was misleading. Rev. Stat., sec. 3565; *Turner v. Railroad*, 51 Mo. 509; *Meyers v. Chambers*, 68 Mo. 626; *Wells v. Sharp*, 57 Mo. 56.

The further point is made against the instruction, in that it permitted a recovery for "costs of medicines," when the petition only charged "for nursing and medical attention." If we should concede this was a variance at all, the remarks made as to the other objection are equally applicable to this.

The instruction given by the court of its own motion as to damages is a copy of that offered by defendant, except that the court added, after the words, "pecuniary loss to the plaintiff," the words, "arising from his loss of her services or society." We can see no objection to such addition. It only makes clear what must or ought to have been intended by that offered by defendant.

As to the contention regarding the amount of the pecuniary loss to plaintiff for the loss of his wife's society, there is, as is said by counsel for plaintiff, no exact standard by which to measure the value of a wife's society. The amount to be recovered must be left to the enlightened judgment of the jury, who must, under the evidence before them, fix upon a reasonable sum.

Other points presented by defendant's counsel have been examined, but we have found nothing justifying a reversal of the cause. The evidence justifies the verdict.

The judgment, with the concurrence of the other judges, is affirmed.

*On rehearing.*

ELLISON, J.—On rehearing of this cause, it is argued that though contributory negligence was not pleaded, and though plaintiff's evidence did not clearly show contributory negligence on the part of his wife, so as to justify the court in taking the case from the jury under the authority of the *Milburn case*, 86 Mo. 104 ; yet if the evidence on the part of plaintiff *tended* to show such contributory negligence, it became an issue which should have been submitted to the jury.

This proposition has been presented by the distinguished counsel for the defendant with ability and evident earnestness, but, in my view, we are relieved from passing on the question by the fact that there is no evidence in the case on the part of plaintiff (and it is conceded that such evidence must appear in the testimony for plaintiff), either proving or tending to prove, contributory negligence.

Dr. McConnell, on cross-examination, stated that he was familiar with the crossing and found no difficulty in driving over in a buggy, day or night ; that he had never driven a wagon over, and that a wagon, being longer-coupled, would be more difficult to get over. He added, "I *think* I could drive a wagon over it, but I never tried to do it."

Another witness stated that if a person was well acquainted with the crossing he could drive an ordinary farm-wagon over safely, but if he was a stranger he thought he could not. "Buggies and short-coupled vehicles are not so dangerous." Plaintiff's witnesses unite in saying, that the crossing was only safe for those who were acquainted with its peculiar condition and that one not acquainted with it is apt to go off, or turn over, or get hurt, or some equivalent expression. While they say there is no danger if you keep the wagon in the track, they, at the same time, say, one unfamiliar with the crossing is not apt to do this, as in order to do so,

you must pull the horses sharply out of the track on account of the turn, and that this condition of the crossing cannot be discovered by one going up' the east approach. "A person cannot see the west approach from the east until on the railroad track."

But, as I discussed the evidence somewhat in detail in the original opinion, I will not pursue the matter further now, and am in favor of affirming the judgment. PHILIPS, P. J., and HALL, J., concur in a separate opinion.

PHILIPS and HALL, JJ., CONCURRING.—We place our concurrence in affirming the judgment of the circuit court more particularly upon the ground, that the question raised on the rehearing of this case does not properly arise on the record.

It is conceded that, under the decisions of the Supreme Court, by which we are bound absolutely, it devolved upon the defendant to plead any contributory negligence of the plaintiff in order to raise such issue. Without such plea there could logically be no such issue of fact for the jury to pass upon. Matters not put in issue by the pleadings should not be submitted to the jury.

The answer not having tendered such issue, and the evidence not being such as to justify the trial court in taking the case from the jury on the ground that plaintiff's evidence showed clearly contributory negligence on the part of plaintiff's wife, it certainly could not devolve on the plaintiff in framing his instructions to submit such issue to the jury. Instructions must be drawn in conformity with the issues.

The plaintiff's instructions properly presented the questions of fact predicated in the pleadings. In all of them the jury were told, that if they found the facts, constitutive of the cause of action alleged in the petition, to exist, and that "in consequence thereof" and "whereby she was injured," they should find for the plaintiff. Under the issue of a general denial this is

all that could be demanded of the plaintiff. And most certainly, if the defendant wished to raise the question presented on the rehearing of this case, it should have asked an instruction directed thereto, thereby affording the trial court an opportunity to pass upon it. It asked no such instruction. Every instruction asked by it was, in effect, given. The question we are asked to pass upon particularly is in fact raised for the first time in this court.

The judgment is affirmed.